**NICOLE JENKINS**
9067 SW 41st Street, Apt. 209
Miramar, FL 33025

and

**LADARIUS ROBERTS**
9067 SW 41st Street, Apt. 209
Miramar, FL 33025

   **Plaintiffs,**

v.

**EQUITY MANAGEMENT II, LLC
a/k/a
EQUITY MANAGEMENT, INC.
d/b/a
LOCH RAVEN VILLAGE, LLC**
8975 Guilford Road, Suite 100
Columbia, Maryland 21046

 SERVE ON:

 Resident Agent
 The Corporation Trust Incorporated
 351 West Camden Street
 Baltimore, Maryland 21201

and

**LOCH RAVEN HOLDINGS, LLC**
Suite 101
203 NE Front Street
Milford, Delaware 19963

 SERVE ON:

 Resident Agent
 Maryland Agent Service, Inc.
 8007 Baileys Lane
 Pasadena, Maryland 21122

and

---

**IN THE**

**CIRCUIT COURT OF MARYLAND**

**FOR**

**BALTIMORE CITY**

**CASE NO:** _____

**SHAPIRO & MACK, LLP**
Suite 600
10320 Little Patuxent Pkwy
Columbia, Maryland 21044

SERVE ON:

Resident Agent
Joseph P. Kempler
Suite 650
10500 Little Patuxent Pkwy
Columbia, Maryland 21044

and

**LAW OFFICE OF MONICA GUILARTE, LLC**
3230 Thames Lane
Laurel, Maryland 20724

SERVE ON:

Resident Agent
Monica Guilarte
3230 Thames Lane
Laurel, Maryland 20724

and

**MONICA GUILARTE**
3203 Thames Lane
Laurel, Maryland 20724

**Defendants.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Nicole Jenkins and Ladarius Roberts, by and through their attorneys, Kathleen P. Hyland, Jane Santoni, and Williams & Santoni, LLP,

2

hereby file this Complaint against Equity Management II, LLC, Loch Raven Holdings, LLC, Shapiro & Mack, LLP, The Law Office of Monica Guilarte, LLC and Monica Guilarte, and state as follows:

## INTRODUCTION

This is an action for wrongful debt collection against two limited liability companies, two debt collection law firms, and a debt collection attorney whose disregard for state and federal consumer protection and debt collection laws wreaked havoc on the Plaintiffs and their family. The Plaintiffs are consumers and Florida residents who, despite never being served in their district court debt collection case, had judgments entered against them in the name of a nonexistent business.

Following entry of judgment, the Defendants then used three business names interchangeably, two of which were not legal entities with no standing to sue or collect debts, and made numerous misrepresentations about the ownership of the alleged debt to the Plaintiffs and the district court. The Defendants also aggressively garnished the Plaintiffs' wages and property, and caused all of their money in their bank accounts – more than double the original judgment amount – to be collected or frozen for three months. The Plaintiffs, who both work to provide for their three young children, had no access to their income, fell behind in all of their revolving payments, car payments, housing payments, lost lines of credit, suffered from extreme stress, and experienced

humiliation of borrowing money from relatives to buy necessities and travel to Maryland to defend themselves.

Even though the district court has vacated the underlying judgments and the Defendants admitted to the court that they have proceeded under the wrong business names, the Defendants have now replaced the inaccurate names and are attempting to proceed in the debt collection action, well past the three-year statute of limitations for contract actions in Maryland. The Defendants have also refused to return the garnished wages.

By filing this action, the Plaintiffs respectfully request relief for the Defendants' many violations of the Fair Debt Collection Practices Act, Maryland Consumer Debt Collection Act, and Maryland Consumer Protection Act, and further relief as this Court deems fit.

## PARTIES

1.     Plaintiff Nicole Jenkins ("Jenkins") is an individual who resides in Florida. Jenkins is engaged to Ladarius Roberts, and they have lived together at all times subject to this dispute. Jenkins works as a Lead Teller for Wells Fargo.

2.     Plaintiff Ladarius Roberts ("Roberts") is an individual who resides in Florida. Roberts works as a Coordinator for Village South, a state-sponsored substance abuse treatment program.

3.     Defendant Equity Management II, LLC ("Equity") is rental housing management business that operates in Maryland, Virginia, and Washington, DC. Equity maintains an active listing of rental housing units on its website at

4

http://www.equitymgmt.com/apartment-search.php. (last accessed July 9, 2015). Equity regularly uses the name Equity Management, Inc. According to the Maryland State Department of Assessments and Taxation ("SDAT"), Equity is not registered in the name "Equity Management" as a Maryland limited liability corporation. According to the Maryland Department of Labor, Licensing and Regulation ("DLLR"), Equity is not licensed as a debt collector in Maryland. According to the Maryland Judiciary Case Search, Equity regularly files debt collection lawsuits against Maryland consumers in the name of "Equity Management."

4.     Not an independent party to this dispute, Loch Raven Village, LLC ("Village") is an unregistered name for the apartment community located at 8402 Greenway Road, Parkville, Maryland 21234. On April 27, 2015, Defendant Equity represented to the District Court for Baltimore County that it is doing business as "Loch Raven Village, LLC" ("Village") in the underlying lawsuit that is the subject of this dispute. *See* Exhibit 1, "Plaintiff's Response to Defendant's Motion to Hold Garnishment." According to SDAT, Village is not registered as a limited liability company. According to the DLLR, Village is not licensed as a debt collector. According to Maryland Judiciary Case Search, Village filed 25 debt collection lawsuits against Maryland consumers in October of 2014.

5.     Defendant Loch Raven Holdings, LLC ("Holdings") is a Delaware corporation that is registered to do business in Maryland. Holdings was a

landlord to Plaintiffs in 2012. According to SDAT, its principal place of business is 203 NE Front Street, Suite 101, Milford, Delaware, 19963.

6.      Defendant Shapiro & Mack, LLP ("Shapiro & Mack") is a law firm in Columbia, Maryland that regularly performed debt collection activities at all times relevant to this dispute.  Between October and December 2014, Shapiro & Mack represented Holdings and Equity in the underlying district court case, from initiating and filing the lawsuit through entry of judgment.

7.      Defendant Law Office of Monica Guilarte, LLC ("Guilarte Law Office") is a debt collection law firm in Laurel, Maryland.  According to the Maryland Department of Labor, Licensing, and Regulation, Guilarte is not licensed as a collection agency in Maryland.  The Guilarte Law Office began representing Equity and Holdings on or about January 28, 2015, and has represented them through all of the post-judgment collection efforts relevant to this dispute.

8.      Defendant Monica Guilarte ("Guilarte") is a debt collection attorney who is licensed to practice law in Maryland.  At all times subject to this dispute, attorney Monica Guilarte has represented Defendants Equity and Holdings in the underlying lawsuit.

## JURISDICTION AND VENUE

9.      The Circuit Court has exclusive original subject matter jurisdiction over the claims asserted herein because the Plaintiffs seek in excess of $30,000 in damages and have exercised their rights to a trial by jury.

10.     The Circuit Court can exercise personal jurisdiction over the Defendants, which can be served with process in Maryland. Defendants are qualified to do business in Maryland with SDAT and maintain resident agents in Maryland.

11.     This Court has jurisdiction and venue of all causes of actions alleged herein, as all Defendants regularly conduct business in Baltimore City or are subject to jurisdiction pursuant Md. Code Ann., Cts. & Jud. Proc. § 6-202 (11).

## FACTUAL ALLEGATIONS

### I.      General Background

12.     On March 21, 2012, Holdings and the Plaintiffs entered into a Standard Rental Agreement to renew a lease for an apartment at 8317 Loch Raven Blvd., Towson Maryland 21286. *See* Exhibit 2, "Lease."

13.     Plaintiffs fell behind in their rent payments, and in June 2012, they left the apartment and moved in with Roberts' mother in 19630 NW 57th Court, Hialeah, FL 33015.

14.     According to Holdings' records, the last payment the Plaintiffs made on this account was on April 20, 2012, in the amount of $1,000.00. *See* Exhibit 3, "Accounting Statement."

15.     Between June 2012 and April 2014, Jenkins and Roberts secured stable jobs and worked full-time as a lead bank teller and program coordinator, and focused on raising their three small children.  By April 2014, they were financially secure and working to rebuild credit.

16.     On or about April 11, 2014, Plaintiffs moved out of Roberts' mother's home and into a new apartment of their own. *See* Exhibit 4, "Photograph of Plaintiffs' Rental Agreement, Dated April 11, 2014."

17.     Plaintiffs' entered a lease agreement with Loch Raven ***Holdings***, LLC. They never had any lease agreements with Loch Raven ***Village***, LLC.

18.     On October 9, 2014, despite the fact that Plaintiffs never had a lease agreement with "Loch Raven ***Village***, LLC" Defendants Shapiro & Mack and Guilarte filed a debt collection lawsuit in ***Village's*** name, Case Number 080400245882014 in the District Court for Baltimore County, to recover $2,114.50 in alleged unpaid rent, late charges, and damages, plus costs, interest, and attorney's fees from the Plaintiffs. *See* Exhibit 5, "Underlying Lawsuit."

19.     Upon information and belief, Loch Raven Village, LLC is a fictitious business name.

## II.     Improper Service

20.     On or about October 31, 2014, Defendants Equity, Shapiro & Mack, and Guilarte caused a process server to go to the Plaintiffs' former residence.

21.     Upon information and belief, on October 31, 2014, Dwayne Burse, a transient squatter who was passing through town and visiting Roberts' brother, answered the door. Upon answering, the process server asked Burse his name, handed him papers, and then ran away.

22.     At all times relevant and material to this dispute, Burse was not a co-tenant to Plaintiffs.

23.   On October 31, 2014, ESQ Process Servers submitted false affidavits in the underlying lawsuit, testifying that it properly served Jenkins and Roberts. *See* Exhibit 6, "Affidavits of Service."

24.   On December 19, 2014, the District Court entered affidavit judgments jointly and severally against both Jenkins and Roberts for $2,114.50, plus costs, interest, and attorney's fees, for a total judgment amount of $2,749.81. *See* Exhibit 7, "Judgments."

25.   Upon information and belief, in January 2015, after entry of judgment, Burse gave someone at Roberts' mother's address the court paperwork. Roberts' mother gave the court paperwork to the Plaintiffs. Prior to this action, the Plaintiffs had no knowledge that the underlying lawsuit existed, or that judgment had been entered against them by Village.

26.   On June 3, 2015, the District Court for Baltimore County vacated the judgments for lack of service. *See* Exhibit 8, "Order to Vacate."

### III.   Shapiro & Mack's Debt Collection Activities

27.   Defendant Shapiro & Mack represented Holdings in the underlying lawsuit. Monica Guilarte, then an employee at Shapiro & Mack, filed the underlying lawsuit. At the time of filing, Village was the only named Plaintiff.

28.   Upon information and belief, when the lawsuit was filed on October 9, 2014, Shapiro & Mack regularly practiced in the field of consumer debt collection and was a debt collector, subject to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6).

29.    The district court complaint included an Application and Affidavit in Support of Judgment allegedly (and illegibly) signed by a representative of Village. *See* Exhibit 5, page 3, "Bogus Affidavit."

30.    Village was not a party to the Defendants' lease with Holdings.

31.    Shapiro & Mack filed the lawsuit and the Bogus Affidavit to collect for Holdings under the wrong business name.

32.    On or about June 15, 2015, Defendants Guilarte filed a Motion to Amend Plaintiff's Name, in which Defendant Guilarte admitted that Village was not the proper entity to bring suit against Plaintiffs Jenkins and Roberts, and that the proper entity was Loch Raven Holdings, LLC. *See* Exhibit 9, "Motion to Amend Plaintiff Name."

33.    Defendant Guilarte attached a new complaint form to this motion that listed Holdings' address as Village's address, at 8402 Greenway Road, Parkville, MD 21234, even though the principal office for Holdings recorded in SDAT is Suite 101, 203 NE Front Street, Milford, Delaware, 19963.

34.    Under 15 U.S.C. § 1692e, the use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization is a false, deceptive, and misleading representation, in violation of the FDCPA.

## IV.    Defendant Guilarte's Debt Collection Activities

35.    On or about January 28, 2015, Guilarte ceased employment at Shapiro & Mack and opened the Law Office of Monica Guilarte, LLC.  Guilarte continued to represent Village in the underlying lawsuit.

36.    Upon information and belief, Defendant Guilarte regularly practices in the field of consumer debt collection and is a debt collector, subject to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6).

37.    At all times relevant to this dispute, Guilarte had knowledge that Village was not the correct business name and that Defendant Holdings was the only party to the underlying contract.

38.    On or about February 23, 2015, Guilarte filed a request for a writ of garnishment on wages for $2,792.40 and a request for a writ on garnishment on property to enforce the judgment in Village's name against Plaintiff Jenkins for $2,792.40.  On March 16, 2015, the Baltimore County District Court signed the garnishment orders against Jenkins.  *See* Exhibit 10, "Garnishment Writs and Orders."

39.    On March 23, 2015, Guilarte sent copies of two of the garnishments via certified mail to Wells Fargo, where Jenkins works and both Plaintiffs have joint accounts.  *See* Exhibit 11, "Proof of Service."

40.    On April 7, 2015, Guilarte filed a request for a writ of garnishment on property to enforce the judgment in Village's name against Plaintiff Roberts for

$2,829.46. On April 22, 2015, the Court signed the garnishment order against Roberts. *See* Exhibit 12.

41.     Upon information and belief, when Guilarte sent Wells Fargo garnishment notices, she did not communicate that the judgment against Jenkins and Roberts was joint and several.   The garnishment request with Ladarius Roberts' name on it has the wrong judgment date listed as "12/19/14" instead of "12/30/14."

42.     According to the garnishment notices, Guilarte sent all correspondence related to garnishments to Jenkins and Roberts at the wrong address.

43.     Jenkins and Roberts have the following bank accounts: a joint deposit account (ending in 0759), team checking account (ending in 4964), and health savings account, (ending in 1819). *See* Exhibit 13, "Plaintiffs' Account Statements."

44.     Jenkins and Roberts routinely had their paychecks directly deposited into their joint deposit account with Wells Fargo.

45.     Between March and June, 2015, Guilarte's instructions caused $5,149.64 to be garnished from the Plaintiffs' deposit accounts, and $823.22 to be garnished directly from Jenkins' wages.   In total, $5,927.86 was taken from the Plaintiffs' accounts and wages by Guilarte's orders. *See* Exhibit 13 and Exhibit 14, "Jenkins' Pay Stub."

46.     When the Plaintiffs learned of the judgments, and did not know about the violations of their due process rights, they contacted Guilarte to ask her to release the rest of monies collected in excess of the judgment. Guilarte alleged that she had sent them a release form and refused to take further action unless they signed it. *See* Exhibit 15, "Full Judgment Amount Release Form."

47.     On or about April 21, 2015, the Plaintiffs filed a *pro se* motion in the underlying lawsuit, requesting that the excess garnishments be lifted. In it, they submitted account statements with asterisks next to the amounts that have been garnished to show that more than the judgment amount had been taken from their accounts for satisfaction of Village's judgments, and that as a result, the Plaintiffs had no disposable income remaining to pay any of their living expenses. *See* Exhibit 16, "Motion for Release."

48.     On April 30, 2015, despite receiving full notice from the Plaintiffs of the additional funds withheld, Guilarte filed a Response to the Motion in opposition to the Plaintiffs' request to stop garnishment, arguing that she had only received the first garnishment check, dated April 13, 2015, in the amount of $245.21 and therefore, she claimed she was owed payment in full for the judgment balance of $2,591.77 in Village's name. Guilarte's response was indifferent to the fact that money in excess of the judgment amount had been taken, frozen, or set aside. *See* Exhibit 1.

49.     Guilarte's response motion also included a new party, Defendant Equity, listed as doing business as Defendant Village.

50.   Guilarte's response motion also included another copy of the release form she allegedly sent to the Plaintiffs. The release form was allegedly sent to a Wells Fargo office in Pennsylvania, but did not include any fax number or proof of service. *See* Exhibit 15.

51.   Upon information and belief, the Wells Fargo Pennsylvania office where Guilarte allegedly sent the release form is no longer in business and/or conducting any garnishment operations.

52.   The release form contains the following language: "RE: Equity Management, Inc. d/b/a Loch Raven Village" and "I, Nicole Jenkins and Ladarius Roberts, hereby authorize the garnished bank funds in the amount of $2,589.21, to be released to the Law Office of Monica Guilarte, LLC, in the form of a cashier check."   By signing this form, the Plaintiffs would have agreed to release the judgment amount back to Guilarte to disburse to Equity and Village, neither of which were parties to the underlying contract between Holdings and the Plaintiffs.

53.   On April 28, 2015, the District Court entered another Order, granting Equity and Village an additional $101.19, plus any amount coming into the hands of Wells Fargo, but not to exceed the amount owed under the judgment and costs. The order also limited the payments to anything coming into account number **4964**. *See* Exhibit 17, "Order."

54.   On May 8, 2015, in direct violation of this order, $900.39 was taken from the Plaintiffs' joint deposit account, ending in **0759**, and set aside for Guilarte. *See* Exhibit 13.

55.   The following chart shows what was taken from the Plaintiffs' Wells Fargo accounts for an alleged debt in the amount of $2,749.81.

| Date | Amount | Account |
|---|---|---|
| 05/08/2015 | 900.39 | Banking - 0759 |
| 04/24/2015 | 1,512.99 | Banking |
| 04/22/2015 | 68.80 | Banking |
| 04/21/2015 | 125.00 | Banking |
| 04/21/2015 | 225.06 | Banking |
| 03/30/2015 | 961.35 | Banking |
| 03/27/2015 | 828.22 | Banking |
| 03/26/2015 | 91.25 | Banking |
| 03/26/2015 | 199.83 | Banking |
| 03/26/2015 | 101.19 | Checking - 4694 |
| 03/27/2015 | 101.81 | Checking |
| 03/26/2015 | 19.75 | Health Savings - 1819 |
| 03/26/2015 | 14.00 | Savings - 9330 |
| Subtotal | **5,149.64** | |
| Wage Garnishment | **823.22*** | Jenkins' Paychecks |
| **TOTAL** | **$5,972.86** | |

*Wells Fargo withheld $1,095.25 from Plaintiff Jenkins' paychecks, but only sent $823.22 to Guilarte, and returned the last disbursement of $272.03 after receiving the Order to Vacate.

*See* Exhibits 13 and 14.

56.   Ever since on or about April 21, 2015, Guilarte has had actual notice of that amounts have been taken from the Plaintiffs' accounts in excess of the judgment owed.

57.     Plaintiffs consulted a Florida attorney, who advised them that Guilarte and Equity's aggressive debt collection actions are illegal, but said that the Plaintiffs needed to hire a Maryland attorney.

58.     Due to the garnishment actions, Plaintiffs did not have any use of their money between late March through the first week of June.  They could not pay their rent, car payments, child care bills, buy groceries, or otherwise provide for themselves and their three small children.

59.     Under Maryland garnishment laws, Md. Code Ann., Cts. & Jud. Proc. § 11-504(b)(5), the Plaintiffs qualified for exemptions of up to $6,000 to the garnishment actions that would have released all of the garnished property.

60.     On May 4, 2015, Guilarte sent Plaintiffs a monthly report from Village, stating that they still owed Equity, d/b/a Village $2,286.23. *See* Exhibit 18, "Judgment Creditor's Monthly Report."

61.     On May 7, 2015, desperate and without resources, Plaintiffs pawned some of their possessions, left their eldest child with family, packed their one and two year old in the car, and drove from Florida to Baltimore to find an attorney.

62.     On May 8, 2015, Plaintiffs hired the undersigned counsel, who immediately filed a Motion to Vacate the Judgments and Stay Garnishments, which is pending before the District Court for Baltimore County, and emailed these documents to opposing counsel.   The Court set a hearing in for June 3, 2015.

63.   Counsel for the Plaintiffs filed a Motion to Testify by Telephone, which the District Court denied.

64.   Plaintiff Jenkins borrowed money from her sister for airfare to attend the June 3, 2015 hearing, incurring additional damages.

65.   As of the date of this lawsuit, Defendant Guilarte has collected $823.22 in wage garnishments on behalf of Village and Equity.  After the court vacated the judgment, the Defendants asked for their money back. On June 10, 2015, Defendant Guilarte refused to give back the funds she obtained on behalf of Village and Equity. *See* Exhibit 19, "June 10, 2015 Email from Guilarte."

66.   On June 15, 2015, rather than dismiss the wrongful debt collection lawsuit, Defendant Guilarte filed the Motion to Amend Plaintiff's Name, admitting that Defendant Holdings is the proper Plaintiff.   The district court granted this motion and replaced Village with Defendant Holdings in the underlying lawsuit.

67.   On June 15, 2015, Defendant Guilarte also filed a Motion to Reconsider the Order to Vacate.

68.   On June 23, 2015, Defendant Holdings became a party to the underlying action as the only named Plaintiff.  The last date of payment between the Plaintiffs and Holdings was on April 20, 2012.  Thus, more than three years have passed between Holdings' appearance in this case and the date of the last payment.

69.    Pursuant to Md. Code Ann., Cts. & Jud. Proc. § 5-101, "a civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."

70.    Village did not have standing to file a lawsuit against the Plaintiffs.

71.    Defendant Guilarte knew that Village was the wrong plaintiff in the underlying suit.

72.    Defendant Guilarte garnished the Plaintiffs' wages and property in the name of Village.

73.    Defendant Guilarte has filed 25 debt collection cases in Maryland under the name "Loch Raven Village, LLC." *See* Exhibit 20, "Maryland Judiciary Case Search Results for Incorrectly Named Lawsuits."

74.    Upon information and belief, Defendant Guilarte regularly files lawsuits in the wrong business name, and then files motions to amend the plaintiffs' names.

75.    Defendant Guilarte filed the underlying action and collected debts on behalf of unlicensed debt collectors, Village and Equity.

76.    Under 15 U.S.C. § 1692e(14), the use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization is a false, deceptive, and misleading representation and a violation of the FDCPA.

77.     Under 15 U.S.C. § 1692e(2), a debt collector may not make a false representation of the amount, character, or legal status of a debt.

78.     Under Md. Code Ann., Com. Law § 14-202 (8), it is a violation to claim, attempt, or threaten to enforce a right with knowledge that the right does not exist.

## V.     Equity's Debt Collection Activities

79.     At all times relevant to this dispute, Defendant Equity used the business name, "Equity Management, Inc.," rather than "Equity Management II, LLC."

80.     Defendant Equity claimed to be doing business as Village.

81.     Defendant Equity has collected and attempted to collect money that it is not entitled to collect.

82.     Defendant Equity caused a judgment to be entered against the Plaintiffs.

83.     Defendant Equity attempted to collect a time-barred debt.

84.     Defendant Equity is not a licensed debt collector in Maryland.

85.     Defendant Equity, doing business as Village, submitted a bogus affidavit in support of judgment in an action for which it was not the original creditor.

86.     Defendant Equity used the judicial garnishment process to collect or attempt to collect the judgment amounts entered against the Plaintiffs in the name of Village.

87.    Upon information and belief, Defendant Equity collected this debt on behalf of the contract that Defendant Holdings signed.

88.    Upon information and belief, Defendant Equity regularly attempts to collect debts on behalf of contracts that Defendant Holdings signed.

## VI.    Debt Collection Actions By Defendant Holdings

89.    Defendant Holdings has used the business names of Village and Equity in an attempt to collect a debt from the Plaintiffs.

90.    Upon information and belief, Defendant Holdings regularly attempts to collect debts using the name of Village.

91.    Defendant Holdings has attempted to collect a debt more than three years after the date of the Plaintiffs' last payment.

92.    In *Stein v. Smith*, 358 Md. 670, 674, 751 A.2d 504, 506 (2000)  the Court of Appeals did not allow a new plaintiff who filed an amended complaint to use the relation back doctrine "because the original complaint was filed by a nonentity and was a nullity," and "there was nothing to which the amended complaint could relate back."

93.    Upon information and belief, Defendant Holdings has also collected $823.22 from the affidavit judgment that the District Court of Maryland for Baltimore County entered in the name of Village and then vacated.

94.    Defendant Holdings, through counsel, refused to give the $823.22 back to the Plaintiffs.

## VII.  Damages Incurred by the Plaintiffs

95.  As a direct result of the Defendants' wrongful debt collection and garnishment actions, the Plaintiffs have suffered from the following actual, economic, and noneconomic damages, including:

a.  Loss of finances and income between March and June 2015:

- Garnished wages of $823.22;

- Eleven overdraft fees of $385.00;

- Three insufficient fund returned check fees of $105.00;

- A personal loan incurred from Plaintiffs' aunt, Vonda Miller, for $1,800.00;

- A personal loan from Plaintiff Jenkins' father, Darlye Jenkins, for $350.00 to pay for daycare, food, and pampers;

- Two maxed-out credit cards, totaling $963, for basic necessities;

- A personal loan from Plaintiff Roberts' mother for $320 to travel to and from Baltimore for legal assistance and a week of daycare;

- Two late fees for rent, totaling $300.00 and a pre-eviction legal fee of $380.00;

- Legal order processing fees of $125.00;

21

- Loss of time-share and possible time-share foreclosure;
- Return fee from Crest Financial for $27.00;
- Airplane tickets to travel to Baltimore for June 3, 2015 hearing, totaling $188.00;
- Late car payment fee of $90.36.

b. Loss of pawned personal items (Wii U and Sound Bar) totaling $240.00

c. Damage to the credit that Plaintiffs have been working towards in hopes of buying a house

d. Loss of a secured line of credit

e. Severe emotional distress, anxiety, humiliation, loss of sleep, changes in mood and appetite

f. Changes in blood sugar for Roberts, who is diabetic

g. Increase in stress-related pain to Jenkins, who suffers from fibromyalgia

h. Stress at work for Jenkins, whose job as a teller required her to handle cash and disburse money on a daily basis, when she could not use her own Wells Fargo bank accounts.

**COUNT ONE**
VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
**15 U.S.C. § 1692a, *et. seq.***
**(Against Defendants Shapiro & Mack, P.A., Law Office of Monica Guilarte, LLC, Monica Guilarte, and Equity Management II, LLC)**

96.   The Plaintiffs incorporate by reference the foregoing allegations of this Complaint.

97.   Pursuant to § 1692e, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. This prohibition specifically includes:

   a. The false representation of the character, amount or legal status of any debt. § 1692e(2);

   b. Threats to take legal actions that cannot be lawfully taken. § 1692e(5).

   c. The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization. § 1692e(14).

98.   Pursuant to § 1692f, a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. This specifically includes any attempt to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. § 1692f(6).

99.   Defendants Shapiro & Mack, Guilarte Law Office, Guilarte, and Equity violated § 1692e(2) by falsely representing the ownership of the debt, names of the business entities and the status of the debt.

100.   Defendants Shapiro & Mack, Guilarte Law Office, Guilarte, and Equity violated § 1692e(14) by using business names other than Loch Raven Holdings, LLC to collect the alleged judgment debt.

101.   Defendants Guilarte Law Office, Guilarte, and Equity violated § 1692e(2) by pursuing the debt in violation of the three-year statute of limitations in Maryland.

102.   Defendants Guilarte Law Office, Guilarte, and Equity violated § 1692e(4) by representing that the Plaintiffs will not receive relief from garnishment until signed an invalid release form authorizing full payment of the debt over to Defendant Equity, an entity that was not a party to the contract or underlying lawsuit, who was also not using a legal business name.

103.   Defendants Guilarte Law Office, Guilarte, and Equity violated § 1692f by using unfair and unconscionable means to collect a debt.

104.   Defendants Guilarte Law Office, Guilarte, and Equity further violated § 1692f by collecting monies from the wrong bank accounts against the District Court order.

105.   Pursuant to § 1692k(a)(1) and § 1692k(a)(3), a debt collector in violation of the FDCPA is liable for actual damages, court costs and attorney's fees.

WHEREFORE Plaintiffs demand judgment for actual and statutory damages, in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000) against Defendants Shapiro & Mack, Law Office of Monica Guilarte, LLC, Monica Guilarte, and Equity Management II, LLC jointly and severally, plus costs and attorney fees against the Defendants.

## COUNT TWO
### VIOLATIONS OF THE MD. CONSUMER DEBT COLLECTION ACT
### Md. Code Ann., Com. Law § 14-201 *et. seq.*
### (Against Defendants Shapiro & Mack, P.A., LLC, Law Office of Monica Guilarte, LLC, Monica Guilarte, Loch Raven Holdings, LLC and Equity Management II, LLC)

106.   The Plaintiffs incorporate by reference the foregoing allegations of this Complaint.

107.   Plaintiffs incurred a debt, which was primarily for personal, family, or household purposes, and is therefore a "consumer transaction" as that term is defined by the MCDCA.

108.   Defendants have attempted to collect a debt arising from a credit contract and are thus "collectors" within the meaning of the Maryland Consumer Debt Collection Act (MCDCA), Md. Code Ann. Com. Law § 14-201 (b).

109.   Pursuant to § 14-202(8), a collector may not claim, attempt, or threaten to enforce a right with knowledge that the right does not exist.

110.   Pursuant to § 14-203, a collector in violation of the MCDCA is liable for any damages proximately caused by the violation.  This explicitly includes

damages for emotional distress or mental anguish suffered with or without accompanying physical injury.

111.   Defendants Guilarte Law Office, Guilarte, Equity, and Holdings violated § 14-202(8) for attempting to collect time-barred debt.

112.   Defendants Shapiro & Mack, Guilarte Law Office, Guilarte, Equity, and Holdings further violated § 14-202(8) for collecting debts that they did not have any legal right to collect, using the wrong business names.

113.   Defendants Guilarte Law Office, Guilarte, Equity, and Holdings further violated § 14-202(8) by entering judgment and collecting the Plaintiffs' garnished wages in the name of the wrong judgment creditor, after admitting that the judgment creditor was not Village.

114.   Defendant Equity violated § 14-202(8) by using the District Court garnishment process without assignment of the judgment, in violation of Maryland Rule 3-624.

115.   Defendants further violated § 14-202(8) by collecting monies from the wrong bank accounts against the District Court order.

116.   Defendant Equity further violated § 14-202(8) by conducting debt collection activities in Maryland without being licensed as a debt collection agency.

117.   Defendants Guilarte Law Office, Guilarte, Equity, and Holdings knowingly violated § 14-202(8).

118.   The Defendants' illegal actions in collecting this debt caused the Plaintiffs to suffer actual damages, monetary loss, inconvenience, stress, humiliation, and mental anguish.

WHEREFORE, Plaintiffs respectfully requests the Court enter judgment in favor of Plaintiffs and against Defendants Shapiro & Mack, P.A., LLC, Law Office of Monica Guilarte, LLC, Monica Guilarte, Loch Raven Holdings, Equity Management II, LLC, jointly and severally, for actual and emotional damages in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000), interest and costs, attorney's fees, and such other relief as the nature of the case may require.

### COUNT THREE
VIOLATIONS OF THE MD. CONSUMER PROTECTION ACT
**Md. Code Ann., Com. Law § 13-101 *et. seq.*
(Against Defendants Loch Raven Holdings, LLC and Equity
Management II, LLC)**

119.   The Plaintiffs incorporate by reference the foregoing allegations of this Complaint.

120.   Plaintiffs are "consumers" within the meaning of the Maryland Consumer Protection Act ("MCPA"), Com. Law § 13-101(c).

121.   The Defendants are subject to all of the consumer protections mandated by the CPA which, among other things, prohibits unfair or deceptive practices in the collection of consumer debts.  MCPA, Com. Law §§ 13-303(c) and (d).

27

122.   Under the MPCA § 13-301 (1), unfair and deceptive practices include false or misleading oral or written statements, which have the capacity, tendency, or effect of deceiving or misleading consumers.

123.   Under the MPCA § 13-301 (2), unfair and deceptive practices include representations that a merchant has a sponsorship, approval, status, affiliation or connection which he does not have.

124.   Defendants actions in violation of the MCDCA constitute unfair or deceptive trade practices in violation of MCPA § 13-301(14)(iii).

125.   Defendants committed unfair and deceptive practices by causing all of the Plaintiffs' money to be garnished and then using that as leverage to induce a release of the judgment amount in the name of Village and Equity.

126.   Defendants committed unfair and deceptive practices by pursuing and collecting time-barred debt.

127.   Defendants committed unfair and deceptive practices by misrepresenting the business names of the plaintiff in the underlying action and the judgment creditors.

128.   The Plaintiffs relied on the misrepresentations of the Defendants to their detriment.

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants Loch Raven Holdings, LLC, and Equity Management II, LLC jointly and severally, and actual damages in excess of SEVENTY-FIVE

THOUSAND DOLLARS ($75,000), plus interest, costs, attorney's fees, and such other relief as the nature of the case may require.

### NOTICE OF CLAIM FOR ATTORNEY'S FEES

Plaintiffs hereby give notice, pursuant to the Maryland Rules, that they seek attorneys' fees pursuant to statute, in this case.

Respectfully Submitted,

Kathleen P. Hyland
Williams & Santoni, LLP
401 Washington Avenue, Suite 200
Towson, Maryland 21204
(410) 938-8666
(410) 938-8668 (fax)
kat@williams-santonilaw.com

Jane Santoni
Williams & Santoni, LLP
401 Washington Avenue, Suite 200
Towson, Maryland 21204
(410) 938-8666
(410) 938-8668 (fax)
jane@williams-santonilaw.com

*Attorneys for Plaintiffs*

29

## REQUEST FOR A TRIAL BY JURY

Plaintiffs request a trial by jury of any claims that may be determined by a jury.

Dated: July 17, 2015

Kathleen P. Hyland
Williams & Santoni, LLP
401 Washington Avenue, Suite 200
Towson, Maryland 21204
(410) 938-8666
(410) 938-8668 (fax)
*Attorneys for Plaintiffs*